HARLE HUMPHREYS v. THE STATE.

No. 8018.   Decided February 13, 1924.

Rehearing denied April 2, 1924.

1.—Murder—Confession—Charge of Court.

One of the main contentions is that defendant's confession should not have been received in evidence because it was not voluntarily made, but there appears nothing unusual about this confession or the taking of it, save that when the county attorney overtook the officers they turned off the road into a field where the first statement was taken which was explained by the circumstance of appellant's removal from Marlin to Waco.

There is not the slightest evidence in the record that threats or coercion of any kind were used to induce appellant to make either of the confessions, and the matter being submitted by a proper charge of the court, there is no reversible error.

### 2.—Same—Argument of Counsel—Reading Confession.

It appears from the bill of exceptions, while counsel representing the State was reading to the jury the appellant's confession he included the following sentence: "That night about seven o'clock in the early part of the night I went into Charlie Irwin's house." This is explained, that included in the confession were many scattered sentences and clauses which were objected to and excluded and that the reading of the sentence objected to was not intentional; there was no error.

### 3.—Same—Evidence—Indictment—Impeachment.

It further appeared from the record that the State introduced in evidence three indictments against defendant for burglary, one charging the burglarizing of said Irwin's house; there was no reversible error on this account, as defendant had taken the stand and it became pertinent for the State to impeach him.

### 4.—Same—Evidence—Cross-Examination—County Attorney—Specific Act.

A specific act of misconduct against defendant which had not been merged into a prosecution was not admissible; however, the mere asking of the question was not such error as to entitle defendant to a new trial, the jury being instructed not to consider it.

### 5.—Same—Argument of Counsel—Charge of Court.

Where appellant objected to certain language used in the argument of the State's counsel, in which reference was made to appellant and also to the activity of the officers in trying to apprehend the guilty party, and of the effect on the community of the commission of such a crime, which was verbally withdrawn by the court, no special charge having been requested, there is no cause for reversal.

### 6.—Same—Sufficiency of the Evidence.

Where, upon trial of murder inflicting the death penalty, the evidence supported the conviction, there is no reversible error.

### 7.—Same—Rehearing—Argument of Counsel.

Where it was not shown that the argument of State's counsel was out of the record, and besides the same was withdrawn by the court, and it did not appear that the jury was led astray by the remarks of the State's counsel, there was no harmful error.

### 8.—Same—Rule Stated—Opinions of Guilt.

Opinions of guilt and criticisms of the accused upon trial while not to be commended have, when condemned by the trial court in the presence of the jury, generally been regarded as not authorizing a reversal, and impressed with the view that the verdict in the present record is not affected by the argument mentioned, but that it is responsive to the evidence before the jury. there is no reversible error.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*E. M. Dodson* and *C. M. Pearce,* for appellant. Withdrawing illegal testimony: Welhausen v. State, 18 S. W. Rep., 330; Schwen v. State, 35 id., 172; Haney v. State, 122 id., 34.

On question of argument of counsel: Tucker v,. State, 257 S. W. Rep., 262; Jarrott v. State, 257 id., 256; Guajardo v. State, 257 id., 247.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State. On question of argument of counsel: Morris v. State, 46 S. W. Rep., 256; Alexander v. State, 199 id., 294; Gaines v. State, 251 id., 249; Boatwright v. State, 249 id., 1078.

HAWKINS, Judge.—Appellant is condemned to suffer death for the murder of Lee Frazier.

Deceased lived some five miles from the city of Marlin with Lee DeWitt. Neither had families. Early on the morning of January 13, 1923, Mr. DeWitt left home to look after some stock. He returned about 2:30 o'clock and found Frazier dead. He was lying on the floor near, or partly, on a shotgun. He had been shot in the neck and face. A hole had been shot through one barrel of the gun near the stock. A hole had also been shot through the door leading from outside the house into the room where the body was found. Three guns were in the room when DeWitt left, only one being loaded. When he returned none were loaded. A box containing some shotgun shells was on the mantel in the room where the body was found and some of these shells were missing. Appellant was not arrested for some ten days after the killing. What led to the arrest is only inferable from the record. A confession is in evidence in which appellant states substantially that on the morning of the killing he walked from Marlin to DeWitt's place carrying a shot-gun with him; that he went to the house and finding no one at home opened the door and went in; that he ate some bread and meat which he found in the kitchen, then went back to the front room where he saw the three shotguns sitting in the corner; that only one was loaded and that he took the two shells out and put them in his pocket and got about eight shells out of a box that was on a shelf over the fireplace; that he then went back into the dining room and had raised the top of a trunk when he heard some one come in the front door; that appellant's gun was leaning against the wall by the trunk and that he picked it up and shot at the man who was coming in; that he did not think the man had seen him at the time he fired the first shot; that after he fired the first shot the man ran into the corner where the guns were and picked one of them up; that by the time he had picked the gun up appellant came into the front room and when he put his gun on the man that time the man said, "Oh, don't shoot me;" that the man had the gun up in front of him and that appellant

shot and the man fell over by the fire-place; that appellant then left the place and threw the empty shells out of his gun near DeWitt's tank and reloaded it with the shells that were taken from the gun in the house; that when he came to the creek he threw his shotgun and all the shells he had into a hole of water. Appellant also admits in this confession that he told three different parties about having killed a man but thought they would have sense enough to keep it; he also says he had picked cotton for Mr. DeWitt the fall before and knew the man he killed was not DeWitt but did not know who he was.

We also gather from the statement of facts that before this confession was made appellant had told the officers about having thrown the gun and shells in the creek, from which information the gun and cartridges were recovered. Facts were also in evidence which indicate that deceased had gone to the mail box, and that appellant entered the house while deceased was gone and that the killing occurred upon his return with the mail.

One of the main contentions is that the confession should not have been received in evidence because it was not voluntarily made. The evidence shows that appellant really made two confessions, which were substantially the same. When the officers became convinced that appellant was the guilty party they took from the jail Marlin and started with him to Waco, fearing that violence might be done him. The county attorney followed, overtook them and took a confession from appellant at that time, which was written in pencil. It was not offered in evidence. There appears to have been nothing unusual about this confession or the taking of it save that when the county attorney overtook the officers they turned off the road into a field where the first statement was taken. This is explained by the circumstance of appellant's removal from Marlin to Waco. A few days later appellant was brought back from Waco and again placed in jail at Marlin and the confession appearing in the record was taken by the county attorney after his return. There is not the slightest evidence in the record that threats or coercion of any kind were used to induce appellant to make either of the confessions. He does not so claim in his own testimony before the jury. He admits that the county attorney told the officers not to ask him any questions but to let him tell his story in his own way. Te only issue raised by him touching the voluntary character of the confession is that some of the officers told him he had better tell it as it would be lighter upon him. This was made an issue and the court in a very fair and full charge submitted it to the jury which they determined in favor of the State. We have been unable to discover in the record anything which would warrant us in disturbing the verdict upon such finding.

Appellant himself testified and affirmed the correctness of many statements found in the confession. He denied eating any food after he entered the house, and denied having examined but one of the guns which were there. He says that he did take some of the shells. He denied having opened the trunk, and claims that when deceased walked into the house appellant shot the first time because deceased started towards the corner where the guns were, and that when he fired the second shot deceased had presented one of the guns at him. He also denied that deceased asked him not to shoot. The foregoing are practically all the variations in appellant's testimony given before the jury and the confession introduced. Upon the issues raised by his evidence the learned trial judge gave an exhaustive charge favorable to appellant from every standpoint. Out of an abundance of caution he even submitted the issue of insanity when it appears to us this issue was barely raised, if at all, by the evidence. Wherever it was practicable for the State to do so it proved by facts and circumstances the truthfulness of the things admitted by appellant in his confession, even to the finding of the two empty shells near the tank where he said they were thrown from his gun after the killing.

It appears from bill of exceptions number two that while counsel representing the State was reading to the jury appellant's confession he included the following sentence:

"That night, about seven o'clock, in the early part of the night, I went into Charlie Irwin's house."

Objection was interposed by appellant to the reading of this portion of the confession and the court immediately instructed the jury not to consider it. The learned trial judge explains this incident by saying that included in the confession were many scattered sentences and clauses which were objected to and were excluded, and that the court undertook to mark such parts on the confession so that they would not be read; that it appeared to the court that he reading of the sentence objected to was not intentional on the part of counsel for the State but was read by inadvertence. It further appears from the record that the State introduced in evidence three indictments against appellant for burglary, one of these charging the burglarizing of said Irwin's house. We find also a bill of exceptions complaining at the admission of such indictments. Appellant had taken the witness stand and testified in his own behalf and therefore it became pertinent for the State to impeach him in any legal way, one of which is by proving that he was under indictment charged with a felony. The court was not in error in permitting the state to introduce such indictments for the purpose of impeachment, and the incident complained of in bill number two does not occur to us to have been of such consequence as would call for a reversal, especially so in view of the fact that the court immediately instructed the jury not to consider it.

The county attorney asked appellant upon cross-examination if he had not "about nine.o'clock gone into another house." Objection to this question was sustained by the court and the jury instructed not to consider it. The ground of objection is not stated but we assume it was to the form of the question. Appellant being upon the witness stand the State could have asked him for impeachment purposes if he was not under indictment for burglary but could not prove a specific act of misconduct against him which had not been merged into a prosecution. The mere asking of the question however does not seem to have been such an error as should entitle appellant to a new trial in view of the court's verbal instruction to the jury under all the facts and circumstances reflected from the record.

Appellant objected to certain language used in argument by counsel for the State in which reference was made to appellant, also to the activity of the officers in trying to apprehend the guilty party, and of the effect on the community of the commission of such a crime. Immediately upon objection being made the court reprimanded counsel and instructed the jury not to consider the argument. Necessarily no absolute rule can be laid down by this court which is controlling in matters of this kind. It depends upon the facts of each particular case, the character of the crime under investigation and many other conditions which must be considered. The activity of the officers had been reflected from the evidence before the jury, and the details of the crime were of such character as the jury might well know that knowledge thereof shocked the community. No special charge in writing was requested, and in view of the prompt action of the court relative to the matter at the time we are of opinion the language used was not of that character which under the circumstances of this case would call for a reversal at our hands.

The evidence leaves no doubt as to appellant's guilt and the facts justified the jury in assessing the extreme penalty.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

April 2, 1924.

MORROW, PRESIDING JUDGE.—Counsel for appellant has filed an argument, showing great care and research, combatting the conclusion reached upon the original hearing, relative to the incidents of the trial to which reference is therein made. This we have carefully examined, duly conscious of the importance of the matter to the accused, considering the verdict rendered. Stress is laid upon the fact, as shown by one of the bills, that counsel for the State, in the course of his argument, said: "The whole community is shocked by this awful crime, and for ten days the Sheriff's Department worked

day and night trying to locate the low down scoundrel who did it, and all the time the guilty party was right here in the shadow of the courthouse.''

And further: ''I might refer to him as a distinguished citizen, but I do not choose to do so.''

It is not shown that this argument was out of the record, but it is contended that it was abusive, and that its effect upon the jury was prejudicial to the appellant. The remarks were promptly withdrawn by the court.

We cannot assume that in a case where the evidence is of the character such as revealed by the present record, the jury was led astray by the remarks of counsel which have been quoted and which were promptly condemned by the trial court in the presence of the jury. They are not of a nature obviously harmful.

Opinions of guilt and criticisms of the accused on trial while not to be commended, have, when condemned by the trial court in the presence of the jury, generally been regarded as not authorizing a reversal. Branch's Ann. Tex. P. C., Secs. 365, 366. We are not impressed with the view that the verdict on the present record was affected by the argument mentioned, but that it is responsive to the evidence before the jury.

The other matters mentioned in the motion have been discussed in the original opinion.

*Overruled.*